UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00553-GNS

BRYAN PACKARD; and
DEBORAH PACKARD                                                    PLAINTIFFS


v.


MARINER FINANCE, LLC; and
PERSONAL FINANCE COMPANY, LLC                              DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DNs 15, 23).  These matters are now ripe for adjudication.  For the reasons that follow, Defendants' first motion to dismiss is **DENIED AS MOOT**, and Defendants' second motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.        BACKGROUND

### A.    Statement of Facts

This matter arises from a series of financial and judicial interactions between Plaintiffs Bryan Packard ("Bryan") and Deborah Packard ("Deborah") (collectively, the "Plaintiffs") and Defendants Mariner Finance, LLC ("Mariner") and Personal Finance Company, LLC ("PFC") (collectively, the "Defendants").  On August 29, 2017, Plaintiffs entered into a Promissory Note, Disclosure Statement, and Security Agreement (the "Note") with PFC that included $1,723.53 in financing and a precomputed finance charge of $775.92, which corresponds to a 35.94% APR and

1

a 33.15% annual interest rate.  (Am. Compl. ¶¶ 13-19, DN 21; Am. Compl. Ex. A, at 1-2, DN 21-1).  Plaintiffs made several payments on the Note but ultimately became unable to pay and ceased payments.  (Am. Compl. ¶ 20).  In the meantime, Mariner purchased PFC, although PFC still remains an active LLC with the Kentucky Secretary of State.  (Am. Compl. ¶¶ 20-21).

On July 10, 2018, Defendants, through their attorneys P'Pool & Roy, PLLC, filed a collection action against Plaintiffs in Hardin District Court, Case No. 18-C-60854, which identified the plaintiff as "Mariner Finance f/k/a Personal Finance Company."[1]  (Am. Compl. ¶ 22; Am. Compl. Ex. B, at 1, DN 21-2).  When Plaintiffs did not answer the collection complaint, the state court judge entered a default judgment on September 12, 2018, (the "Default Judgment"), which provided for recovery "of $1,820.87, plus attorney's fee in the amount of $600.89, plus interest in accordance with the terms of the agreement from 06/29/2018 until date of judgment, then balance plus interest at the rate of 6.00% until paid, and its court costs herein[.]"  (Am. Compl. ¶¶ 38-40; Am. Compl. Ex. D, at 1, DN 21-4).  Shortly thereafter, on December 17, 2018, Defendants' attorneys served a wage garnishment on Bryan's employer for $2,864.36, which Plaintiffs allege misrepresented and overstated the total amount due.  (Am. Compl. ¶¶ 55-59; Am. Compl. Ex. E, at 1, DN 21-5).

B.    **Procedural History**

On August 2, 2019, Plaintiffs filed the present lawsuit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Kentucky Consumer Protection Act, KRS 367.110-.360 ("KCPA").  (Compl. ¶¶ 1-4, DN 1).  On September 27, 2019, Defendants filed their first motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and

---

[1] Plaintiffs allege that "Mariner Finance *used to be* a registered trade name owned by Mariner Finance, LLC, but that Mariner Finance was not a person or legal entity at the time the collection complaint was filed.  (Am. Compl. ¶¶ 25-26).

2

12(b)(6).  (Defs.' Mot. Dismiss, DN 15).  On November 15, 2019, Plaintiffs filed a First Amended

Complaint dropping the claim under the FCRA, retaining claims under the FDCPA and the KCPA,

and adding additional state law claims.  (Am. Compl. ¶ 1, DN 21).[2]  On November 29, 2019,

Defendants again moved to dismiss.  (Defs.' Mot. Dismiss, DN 23).  Plaintiffs responded, and

Defendants replied.  (Pls.' Resp. Defs.' Mot. Dismiss, DN 41; Defs.' Reply Mot. Dismiss, DN 42).

## II.      JURISDICTION

The Court has subject matter jurisdiction over this action via federal question, 28 U.S.C. §

1331, because the Complaint alleges violations of the FDCPA.  (Am. Compl. ¶¶ 1-2).  The Court

has supplemental jurisdiction over the remaining state law claims because they arise from the same

case and controversy as the federal claim. 28 U.S.C. § 1367(a); (Am. Compl. ¶¶ 1-2).

## III.      STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) considers whether the court has subject

matter jurisdiction over the matter.  The standards for dismissal under Fed. R. Civ. P. 12(b)(1) and

12(b)(6) differ in the Sixth Circuit. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d

1125, 1134 (6th Cir. 1996).  Threshold challenges to subject matter jurisdiction under Fed. R. Civ.

P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P.

12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). In most circumstances, a plaintiff bears the

burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction.

*Id.*

---

[2] The filing of the First Amended Complaint rendered moot the motion to dismiss the Complaint.
*See Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) ("When a pleading is amended
pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original
pleading, i.e., 'the original pleading no longer performs any function in the case and any
subsequent motion made by an opposing party should be directed at the amended pleading.'"
(citations omitted)).  The parties apparently recognized this fact:  Defendants moved to dismiss
the First Amended Complaint and Plaintiffs never responded to the first motion to dismiss.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) considers the sufficiency of the complaint.  In order to survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).  Even so, the Court need not accept a party's "bare assertion of legal conclusions."  *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted).  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

As clarified in the First Amended Complaint, Plaintiffs allege the following claims against Defendants: (1) violations of the FDCPA; (2) violations of the KCPA; (3) violations of KRS 360.020, the usury statute; (4) violations of both KRS 453.050 and KRS 286.4-533(3), as actionable under Kentucky's negligence per se statute, KRS 446.070; (5) abuse of process; and (6) unjust enrichment.  (Am. Compl. ¶¶ 82-173).  Defendants contend that each of these claims must be dismissed in full for claim-specific reasons and generally under the *Rooker-Feldman* doctrine. (Defs.' Mot. Dismiss 1-2).

### A.   Fair Debt Collection Practices Act

The FDCPA generally prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  To establish a prima facie case for a violation of the FDCPA, a plaintiff must show (1) the

plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a, (2) the debt arises out of a transaction entered primarily for personal, family, or household purposes, (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C. § 1692a, and (4) the defendant violated the FDCPA. *Whittiker v. Deutsche Bank Nat'l Tr. Co.*, 605 F. Supp. 2d 914, 939 (N.D. Ohio 2009) (citing *Duncan v. Citibank*, No. Civ. 06-0246, 2006 WL 4063022, at *5 (D.N.M. June 30, 2006); *Grimard v. Palmer, Reifler & Assocs.*, No. 07-CV-12128, 2007 WL 2287831, at *2 (E.D. Mich. July 31, 2007)).

Plaintiffs assert that each of these elements is met with regards to both Mariner and PFC. (Am. Compl. ¶¶ 5-8, 68-81). Rather than arguing that Plaintiffs' allegations do not demonstrate a violation of the FDCPA, Defendants primary argument at this point is that they are "creditors" rather than "debt collectors" under 15 U.S.C. § 1692a. (Defs.' Mot. Dismiss 4-9). If Defendants are creditors with regards to the debt in question, then Plaintiffs' FDCPA claim must fail. The FDCPA provides the relevant definitions:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.
>
> The term "debt collector" means any person who [1] uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [3] the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(4), (6). With regards "to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (citations omitted).

5

Plaintiffs first contend that Mariner is a debt collector because Mariner filed the state collection complaint in the name of a non-existent entity—Mariner Finance—rather than its real name—Mariner Finance LLC. (Am. Compl. ¶ 70). This allegation appears to implicate the third definition of debt collector—i.e., Mariner used a name other than its own when attempting to collect debt. This rule, often known as the "false-name exception," is an exception to the general rule that the FDCPA is not applicable to a creditor collecting its own debt. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019); *see also Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004) (noting that the FDCPA can apply when "a creditor uses a pseudonym to collect a debt—that is, poses as a debt collector." (citing 15 U.S.C. 1692a(6))). It is a stretch, however, to conclude that the mere omission of "LLC" from Mariner's name would transform it from a creditor to a debt collector. *See Hart v. Pac. Rehab of Maryland, P.A*., No. CV-12-2608, 2013 WL 5212309, at *12 (D. Md. Sept. 13, 2013) ("The errors, variations, or misnomers in the iteration of the names of the State plaintiff entities . . . do not transform the State plaintiff into a debt collector."). In other words, the use of the name Mariner Finance instead of Mariner Finance LLC did not plausibly indicate or mislead the Plaintiffs into believing that a third party was attempting to collect the debt. *See Maguire v. Citicorp Retail Servs., Inc*., 147 F.3d 232, 235 (2d Cir. 1998) ("A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, 'pretends to be someone else' or 'uses a pseudonym or alias.'" (citation omitted)).

Plaintiffs more persuasively argue that Mariner could meet the second definition of debt collector—i.e., Mariner attempted to collect "due another," namely Plaintiffs' debt that was originated by and due to PFC. (Am. Compl. ¶ 72; Pls.' Resp. Defs.' Mot. Dismiss 13). Alternatively, Plaintiffs argue that if PFC initiated the collection action and still owned the debt,

then PFC could be a debt collector under the third definition—i.e., PFC used the name of a third party (Mariner) to collect on its own debts.  (Am. Compl. ¶ 81; Pls.' Resp. Defs.' Mot. Dismiss 13).  Plaintiffs' response even suggests that a wholly unrelated third party—Wells Fargo Bank, N.A.—acquired ownership of the Note prior to the filing of the state collection action.  (Pls.' Resp. Defs.' Mot. Dismiss 14-15).

The Supreme Court recently elaborated on the meaning of a "debt collector" when debt is originated, purchased by another entity, and then subsequently collected.  First, the Supreme Court accepted the general rule that "third party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not." *Henson v. Santander Consumer USA Inc*., 137 S. Ct. 1718, 1721 (2017).  Second, the Court went on to conclude that those who purchased debt originated elsewhere were not "debt collectors" because they were still collecting a debt owed to themselves, not to someone else—i.e., they were not a third-party debt collector. *Id*. at 1726.

The problem in the case *sub judice*, however, is that it is unclear who owned the debt in question when the state collection action was first filed.  The answer to this question is essential to determine if Defendants were creditors or debt collectors with respect to Plaintiffs' debt.  Defendants would have this Court draw the "only plausible inference . . . that Mariner now owned the loan and was collecting on behalf of itself." (Defs.' Mot. Dismiss 6).  Inferences are not drawn against the non-movant at the motion to dismiss stage, especially when Defendants are presumably the most well-situated parties to provide proof about who owned Plaintiffs' debt. [3]  In fact, since

---

[3] If this Court were to now accept and consider such evidence from outside the pleadings, the motion to dismiss would likely need to be considered a motion for summary judgment. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co*., 452 F.3d 494, 503 (6th Cir. 2006).  Answering who is a "debt collector" under the FDCPA does generally seem to be a question more appropriately considered on a motion for summary judgment.  For instance, the second definition of debt

the state collection complaint included no proof regarding ownership of the Note, it is unclear how these Plaintiffs would be able to prove pre-discovery which entity owned the debt in question. Without more information or some stipulation from the parties, it cannot be determined that Defendants are unequivocally not debt collectors within the meaning of the FDCPA. *See Conant v. Wells Fargo Bank*, 24 F. Supp. 3d 1, 17 (D.D.C. 2014) ("Accordingly, Plaintiff's FDCPA claim also depends on whether, when, and how Wells Fargo acquired Plaintiff's mortgage. If, as it claims, Wells Fargo acquired Plaintiff's mortgage as part of its 2009 merger with Wachovia at a time when Plaintiff was not in default, then this claim should also be dismissed."); *McDevitt v. Wells Fargo Bank*, 946 F. Supp. 2d 160, 168 (D.D.C. 2013) ("Because the parties agree that Wells Fargo acquired McDevitt's debt in 2009 as part of a merger with Wachovia Mortgage . . . Wells Fargo indisputably is a creditor, not a 'debt collector.'"). As such, Plaintiffs have plausibly stated that Defendants are debt collectors pursuant to 15 U.S.C. § 1692a(6) in order to withstand the motion to dismiss.[4]

### B.   <u>Kentucky Consumer Protection Act</u>

The KCPA makes unlawful any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." KRS 367.170(1). The KCPA is to have "the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co*., 759 S.W.2d 819, 821 (Ky. 1988).

---

collector is not merely one collecting debt due another, it is one who regularly collects debt due another. Certainly, the sort of documentation needed to prove or disprove the extent to which Defendants *regularly* collects debt due another (or not) would have to come from outside the present record and would require discovery.

[4] In their response, Plaintiffs also contend that the rate of attorney's fees violated the FDCPA under *Currier v. First Resolution Investment Corp*., 762 F.3d 529 (6th Cir. 2014). (Pl.'s Resp. Defs.' Mot. Dismiss 10-11). Defendants' motion to dismiss, however, argues that they are not subject to the FDCPA; it does not address Plaintiffs' specific alleged FDCPA violations. (Defs.' Mot. Dismiss 4-6).

Defendants argue that their so-called "litigation conduct" cannot serve as the basis for a KCPA claim because it does not qualify as "trade or commerce" for KCPA purposes.  (Defs.' Mot. Dismiss 10).  Trade and commerce are broadly defined, encompassing "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."  KRS 367.110(2).

Plaintiffs allege that the creation of the Note constituted "trade and commerce" under the KCPA, and the statute was violated by Defendants' conduct in connection with the Note transaction, the state collection action, and the subsequent wage garnishment  (Am. Compl. ¶¶ 14, 61, 82-94, 128-140).  As an initial matter, the transaction resulting in the Note does appear to fall within the scope of the KCPA.  This Court previously concluded that the Kentucky Supreme Court "would find th[e] sale of credit to be a 'service' within the meaning of the KCPA."  *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 792 (W.D. Ky. 2003); *see also Stevens*, 759 S.W.2d at 820 (holding that "the purchase of an insurance policy is a purchase of a 'service' intended to be covered by the [KCPA].").  It is tougher to determine, however, whether Defendants' subsequent litigation conduct constitutes "trade or commerce" for KCPA purposes.  If the sale of credit constitutes a "service" under *Stafford*, it seems logical to conclude that subsequently collecting on that credit is part and parcel of the "service" provided by the creditor.  In other words, it appears contradictory to conclude that a creditor is subject to the KCPA when granting credit, but not when using state courts to collect on that credit.[5]

---

[5] One of the plaintiff's KCPA claims in *Stafford* was that the defendant bank "took advantage of, and attempted to extort money from consumers through threats and false reporting," *Stafford*, 262 F. Supp. 2d 776, 791-92, which is collection type activity that a debt collector might attempt before resorting to filing a collection lawsuit.  *See Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297,

9

To counter this point, Defendants point to *Bennett v. Ford Motor Co*., No. 5:07-CV-115, 2008 WL 4000558 (W.D. Ky. Aug. 25, 2008), in which this Court concluded that actions taken by a defendant to defend itself "in the conduct of litigation" was not an action taken "in the conduct of trade or commerce." *Id*. at *3. This case is helpful, but it is also distinguishable. The litigation conduct at issue in *Bennett* arose out of the defendant's *defense* of the federal court KCPA action itself, not the *prosecution* of a state court collection action as Defendants have done here. *Id*. It is one thing to allow allegedly unfair prosecutorial conduct to be the basis for a *subsequent* KCPA claim; it is another thing entirely to allow defensive conduct to bolster a KCPA claim in the very same lawsuit.

Plaintiffs' responsive briefing suggests that the proper framing of this issue is whether "trade or commerce" encompasses "collection activity," not whether it encompasses "litigation conduct" more generally. (Pls.' Resp. Defs.' Mot. Dismiss 16-17). Kentucky decisions do not appear to provide any guidance, however, on whether allegedly unfair collection activities trigger the KCPA. In *Smith v. Discover Bank*, No. 6:14-CV-151, 2015 WL 1021423 (E.D. Ky. Mar. 9, 2015), a sister court considered a motion to dismiss plaintiff's FDCPA and KCPA claims that were premised on two allegations: "that the collection action against [plaintiff] was time barred when [defendants] filed it . . . [and] that they filed falsified documents in the Perry Circuit Court action . . . ." *Id*. at *1. While not specifically addressing the question of whether collection activities fall within the gamut of the KCPA, the Court allowed the KCPA claims past the motion to dismiss. *Id*. at *3. That court again took up the case on a motion for summary judgment, considering the allegation that the defendants filed falsified statements in a collection action and ultimately granted

---

304 n.5 (6th Cir. 2008) (accepting without deciding that reporting debt to a credit reporting agency constituted "collection activity") (citation omitted)).

summary judgment because the plaintiff had failed to point to an "ascertainable loss of money or property" as required by KRS 367.2201(1).  *Smith v. Discover Bank*, No. 6:14-CV-151, 2016 WL 2733130, at \*2 (E.D. Ky. May 10, 2016).  Thus, the court granted summary judgment because plaintiff had failed to prove an element essential to her KCPA claim, not because the KCPA did not apply to the collection action initiated and litigated by defendants.

A similar result occurred in a case principally relied on by Defendants, *Lucky v. Kentucky Bank (In re Lucky)*, No. 05-54625, 2011 Bankr. LEXIS 5734 (Bankr. E.D. Ky. Mar. 21, 2011).  In *Lucky*, the bankruptcy court considered a KCPA claim premised on the disclosure of private information in a bankruptcy proof of claim.  *Id*. at \*21-23.  Defendants note that the court stated that the "filing of a proof of claim is not done in the 'conduct of trade' as required for a claim based on the KCPA . . . ."  *Id*. at \*22-23.  As highlighted by Plaintiffs, however, the *Lucky* court provides no analysis to support this conclusory statement.  (Pl.'s Resp. Defs.' Mot. Dismiss 17).  Moreover, before reaching this point, the *Lucky* court identified three other distinct reasons the plaintiff's claim failed under the KCPA framework.  In other words, as in *Smith*, the bankruptcy court in large part dismissed on KCPA grounds, not because the KCPA did not apply.

Plaintiffs also point to a plethora of cases from other jurisdictions to support their argument that collection activity is generally covered by consumer protection laws.  (Pl.'s Resp. Defs.' Mot. Dismiss 16-17).  These cases demonstrate a marked trend of interpreting state consumer protection laws to cover collection related activities.  In *Guzman v. Mel S. Harris & Associates, LLC*, No. 16 CIV. 3499, 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018), the court concluded that the persistent filing of fraudulent debt collection lawsuits was within the scope of New York General Business Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . ."  *Id*. at \*12; N.Y. Gen. Bus. Law § 349(a).  In

*Morgan v. Vogler Law Firm, P.C.*, No. 4:15-CV-1654, 2017 WL 4387351 (E.D. Mo. Oct. 3, 2017), the court considered an unlawful collection suit under the Missouri Merchandising Practices Act § 407.020, which proscribes "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." *Id*. at *6-7; Mo. Stat. § 407.020(1). In *Sneed v. Winston Honore Holdings, LLC*, No. 16-C-2564, 2017 WL 467686 (N.D. Ill. Feb. 3, 2017), the court held that fraudulent service of process in connection with a foreclosure action was actionable under the Illinois Consumer Fraud Act § 505/2, which makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." *Id*. at *5; 815 Ill. Comp. Stat. 505/2. Finally, in *Gallagher v. Funeral Source One Supply & Equipment Co*., No. 14-CV-115, 2015 WL 773737 (D.N.H. Feb. 24, 2015), the court flatly rejected the argument that abusive litigation practices cannot serve as the basis for a claim under the New Hampshire Consumer Protection Act § 358-A:2, which prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *Id.* at *3; N.H. Rev. Stat. Ann. § 358-A:2.[6]

Defendants refute these cases, pointing out that none of them interpret the KCPA and that the other consumer protection statutes offer "wildly different" scopes of protection. (Defs.' Reply Mot. Dismiss 8). Defendants are correct, of course, that these out-of-jurisdiction cases interpret different consumer protection laws that offer somewhat different scopes of protection. To characterize them as "wildly different" is misleading, however. To the contrary, as noted above,

---

[6] There are numerous other cases that reach similar results when interpreting different state consumer protections laws. *See, e.g.*, *Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc*., 932 F.2d 37, 43 (1st Cir. 1991) (Massachusetts); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Small Smiles Holding Co., LLC*, 781 F. Supp. 2d 597, 602 (M.D. Tenn. 2011) (Tennessee); *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 411 (Alaska 2017) (Alaska).

the respective consumer protection laws all proscribe roughly the same behavior and afford consumers similar protections against deceptive practices in the context of trade or commerce. Absent clear guidance from the Kentucky Supreme Court on this issue, in light of the national trend toward extending consumer protection laws to cover collection activity and even litigation conduct and the admonition that the KCPA is to have the broadest possible application, Defendants' motion is denied as to the KCPA claims.

      **C.**    <u>**Usury**</u>

      Plaintiffs allege that Defendants charged usurious interest in violation of KRS 360.010 and 360.020 via the collection action and subsequent wage garnishment. (Am. Compl. ¶¶ 95-99, 141-145). As previously noted, the Note was for $1,723.53 plus a $775.92 pre-computed finance charge, which corresponds to a 35.94% APR and a 33.15% annual interest rate. (Am. Compl. ¶¶ 16-17; Am Compl. Ex. A, at 1-2). Under KRS 360.010 and 360.020, relied on by Plaintiffs in the Amended Complaint, the maximum legal rate of interest is generally 8% a year. As noted by Defendants, however, the relevant provision governing the Note is KRS 286.4-530(1) of the Kentucky Consumer Loan Act, which permits "charges not in excess of three percent (3%) per month [36% annually] on any loan where the original principal amount of the loan is not in excess of three thousand dollars ($3,000)[.]" The Note's 33.15% interest rate with a principal amount of less than $3000 thereby complies with KRS 286.4-530(1).

      Rather than contend that Defendants violated KRS 360.010 and 360.020, Plaintiffs appear to reframe their usury claim to contest the collection complaint and subsequent Default Judgment that awarded Defendants $1,820.87 plus interest "in accordance with the terms of the agreement." (Am. Compl. Ex. D, at 1; Pls.' Resp. Defs.' Mot. Dismiss 9). Plaintiffs argue that there can be no interest rate "in accordance to the agreement" because the Note included a precomputed finance

charge, not an interest rate.  (Pls' Resp. Defs.' Mot. Dismiss 8-9).  While this is factually correct, a consumer loan company can in some circumstances convert a precomputed loan into a simple interest loan as long as the company first rebates the unearned finance charge.  *See* KRS 286.4-530(7)-(8).  Plaintiffs contend that here there is no evidence that Defendants ever rebated the unearned finance charge, which would prevent conversion of the Note to a simple interest loan.  (Pls.' Resp. Defs.' Mot. Dismiss 8).  If Plaintiffs took issue with the way the Default Judgment awarded interest on the Note, however, their recourse was directly with the Hardin District Court or on appeal.  As such, Plaintiffs' freestanding usury claim runs afoul of the *Rooker-Feldman* doctrine.

Through its decisions in *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court established the general rule that district courts lack jurisdiction to review state court judgments.  Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  *Lance v. Dennis*, 546 U.S. 459, 463 (2006).  This doctrine, however, does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 293 (2005).  Rather, the doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id*. at 284.  When applying this doctrine, the Sixth Circuit looks to the source of the plaintiff's injury:  "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.  If there is some other source of injury . . . then the plaintiff asserts an independent claim."  *Berry v. Schmitt*, 688

F.3d 290, 299 (6th Cir. 2012) (citation omitted).   Relatedly, the source of a plaintiff's harm is closely connected to the relief that is requested.  *Id*.

The source of Plaintiffs' usury claim is the interest that was awarded in the Hardin District Court Default Judgment.  It is not the interest rate as set forth in the Note, which Plaintiffs now appear to now concede is valid on its face under KRS 286.4-530(1).  And while Plaintiffs contest the interest rate requested in the collection complaint, it is not the complaint that caused them harm.  Rather, it is the Default Judgment issued by the district court.  Plaintiffs' argument that Defendants failed to prove properly that they rebated the unearned finance charges essentially argues that the Hardin District Court had insufficient evidence to award Defendants interest on the Note.  There is no way for this Court to conclude that Defendants were awarded a usurious interest rate without also concluding that the Default Judgment is invalid, which this Court does not have the power to do.  *See In re Isaacs*, 895 F.3d 904, 912-13 (6th Cir. 2018) ("This request for relief effectively asks the bankruptcy court to vacate the state-court judgment, and thus it clearly identifies the state-court judgment as the source of [the plaintiff's] injury.").

The Sixth Circuit recently dealt with a similar situation in *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020).  In *VanderKodde*, the Sixth Circuit considered a situation in which defendants allegedly collected an unlawful rate of post-judgment interest via writ-of-garnishment requests.  *Id*. at 400.  The district court identified the underlying judgments as the source of the plaintiffs' injuries and thereby applied *Rooker-Feldman* to dismiss the case. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 314 F. Supp. 3d 836, 840 (W.D. Mich. 2018).[7]  In

---

[7] The district court also found that plaintiffs were injured by the writs of garnishment, *id*. at 841, but the Sixth Circuit previously made clear that a writ of garnishment is not a state court judgment. *See Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892-93 (6th Cir. 2020) (describing a writ of garnishment as merely arising out of a ministerial process).

reversing, the Sixth Circuit clarified that the source of the injury was actually the "defendants' 'actions in tallying the amount of relief requested,' rather than the state-court judgments themselves." *VanderKodde*, 951 F.3d at 403 (quoting *Van Hoven*, 947 F.3d at 893). In other words, the alleged improper writ "did not flow from the judgments as a natural, inevitable consequence of their existence. Instead, it required independent conduct by defendants." *Id*. at 404.

In the present case, Plaintiffs' reframed usury argument is that the Default Judgment improperly awarded "interest thereon in accordance to the agreement" because it was unclear if Defendants ever rebated unearned finance charges, in the absence of which there could be no conversion of the Note into one with simple interest. (Pl.'s Resp. Defs.' Mot. Dismiss 9). That determination, however, would necessarily predate the award of interest—i.e., it is one the state court judge would have made as a prerequisite to awarding interest. Once that decision was made, the Default Judgment explicitly stated that Defendants had a right to interest "in accordance with the agreement." Therefore, the subsequent calculation of interest for garnishment purposes was clear on the face of the Note and merely "flow[ed] from the judgments as a natural, inevitable consequence." As such, the source of Plaintiffs' injury was the Default Judgment, not the actions of Defendants. Plaintiffs' closing argument in their response admits as much: "This makes the prejudgment interest awarded in the Default Judgment usurious . . . ." (Pl.'s Resp. Defs.' Mot. Dismiss 9). This result is further bolstered by the fact that each of the usury arguments now levied at this Court could have been made to the state court in the first instance or in a motion for reconsideration.[8]

---

[8] Plaintiffs also allege that they have a right to maintain a separate cause of action for usury under *Sherley v. Trabue*, 85 Ky. 71 (1887). (Pl.'s Resp. Defs.' Mot. Dismiss 18-19). *Sherley* is a case, however, that interprets a completely different statutory scheme than the one at hand here, and

In conclusion, Plaintiffs' freestanding usury claim is barred by the *Rooker-Feldman* doctrine.[9]

### D. <u>Negligence Per Se:  KRS 453.050 and 286.4-533(3)</u>

Defendants also contend that Plaintiffs' negligence per se claims must also fail as a matter of law.  (Defs.' Mot. Dismiss 12-13).  "[N]egligence per se 'is merely a negligence claim with a statutory standard of care substituted for the common law standard of care.'"  *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 927 (Ky. 1994) (citation omitted).  The relevant negligence per se statute in Kentucky provides:  "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  KRS 446.070.  To state a claim under KRS 446.070, the (1) allegedly violated statute must be penal in nature or provide no civil remedy, (2) the person damaged must be within the class of persons the statute is intended to protect, and (3) the injury suffered must be an event which the regulation was designed to prevent.  *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005) (citations omitted); *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997).

The statutes that Plaintiffs claim Defendants violated are KRS 453.050, which generally governs taxation of costs and attorney's fees,[10] and KRS 286.4-533(3), which allows for "a

---

Plaintiffs have provided no case law to suggest that the *Sherley* analysis should be extended to the present usury statute.

[9] The same fate may not befall Plaintiffs' FDCPA claims because challenging allegedly unfair actions taken to secure a state court judgment is not the same thing as challenging the judgment itself.  *See Wood v. Midland Funding, LLC*, 698 F. App'x 260, 263 (6th Cir. 2017) ("An allegation of unlawfully creating a tainted state-court order is not the same as challenging that order."); *Burke v. Lawrence & Lawrence, PLLC*, No. 3:15-CV-00861, 2018 WL 1440837, at *2-3 (W.D. Ky. Mar. 22, 2018) (noting that the *Rooker-Feldman* "doctrine does not bar a plaintiff from seeking redress for actions taken by a debt collector prior to the entry of a judgment."  (citing *Harrington v. DH Capital Mgmt., Inc.*, No. 3:14-CV-627, 2014 WL 5776203, at *3 (W.D. Ky. Nov. 5, 2014))).

[10] KRS 453.050 provides in full:

17

reasonable attorney's fee, in connection with the collection of a loan, actually incurred by the licensee and paid to an attorney who is not an employee of the licensee." (Am. Compl. ¶¶ 101-109, 116-123, 147-155, 162-169). Defendants contend that they have not violated these statutes and that neither statute is penal in nature. (Defs.' Mot. Dismiss 12-15). Plaintiffs' response reiterates several points of the pleadings, but it does plead nor clarify how either of these statues are penal in nature. Moreover, these statutes do not prescribe a standard of care that can displace the common law standard. Rather, both statutes, especially KRS 453.050, are more akin to a Kentucky law that "simply prescribes procedures, committees, and methods . . . ." *Higgs v. Golden Gate Nat'l Senior Care, LLC*, No. 3:17-CV-00192-CRS, 2018 WL 1997767, at *3 (W.D. Ky. Apr. 27, 2018) (quoting *Pace v. Medco Franklin RE, LLC*, No. 1:12-CV-00132, 2013 WL 3233469, at *5 (W.D. Ky. June 25, 2013)). Similarly, because these statutes merely lay out procedures for a prevailing party to follow when collecting costs and attorney's fees, it is difficult to ascertain who, if anyone, the statutes are designed to protect.[11]

---

Clerks shall tax one (1) attorney's fee only in the bill of costs of the successful party at the termination of the action, but no attorney's fee shall be taxed in any court if the amount in controversy, exclusive of interest and costs, does not exceed fifty dollars ($50), and no garnishee shall be allowed an attorney's fee. The bill of costs of the successful party shall include, in addition to other costs taxed, the tax on law process and official seals, all fees of officers with which the party is chargeable in the case, postage on depositions, the cost of copy of any pleading or exhibit obtained, the cost of any copies made exhibits and the allowance to witnesses, which the court may by order confine to not more than two (2) witnesses to any one (1) point.

[11] Compare KRS 453.050 and 286.4-533(3) with a statute like KRS 530.080, which states that "a person is guilty of endangering the welfare of an incompetent person when he knowingly acts in a manner which results in an injury to the physical or mental welfare of a person who is unable to care for himself because of mental illness or intellectual disability." KRS 530.080(1). In *Pace*, this Court had no trouble concluding that an "incompetent person" was clearly the party intended to be protected by this criminal statute. *Pace*, 2013 WL 3233469, at *3.

Furthermore, Plaintiffs have not clarified how KRS 286.4-533(3) was violated by Defendants.  KRS 286.4-533(3) allows for a creditor to collect "*reasonable* attorney's fees" paid to collect a loan that was "*actually* incurred."  Defendants collected on the Note pursuant to a 33% contingency fee agreement with former defendant P'Pool & Roy.  (Defs.' Mot. Dismiss 2). Plaintiffs have not demonstrated that the contingency fee was unreasonable or that it was not incurred by Defendants.  Rather, the bulk of Plaintiffs' contentions focus instead on an allegation that Defendants misled the state court regarding the relevant attorney's fees agreement, but that argument alleges violations of the FDCPA or the KCPA, not KRS 286.4-533(3).

Finally, Plaintiffs have not directed this Court to any case law that has allowed a KRS 446.070 negligence per se claim to be premised on either KRS 453.050 or KRS 286.4-533(3). These claims will be dismissed.

## E.  <u>Abuse of Process</u>

Abuse of process is generally "the irregular or wrongful employment of a judicial proceeding . . . ." *Stoll Oil Ref. Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960).  To properly plead an abuse of process claim, a plaintiff must allege two elements:  "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."  *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (citations omitted).  A plaintiff must show "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process," but there is no abuse of process claim "where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Simpson v. Laytart*, 962 S.W.2d 392, 394-95 (Ky. 1998) (citation omitted).

Plaintiffs' abuse of process claim is based on the Defendants' filing of the collection lawsuit with the purpose, "in part . . . of obtaining a judgment that awarded the plaintiff attorney's

fees . . . ." (Am. Compl. ¶¶ 125, 171). Plaintiffs' response does not further this contention or otherwise respond to Defendants' motion to dismiss, which alone could serve as grounds to dismiss. *See Shaibi v. Louisville & Ind. R.R. Co.*, No. 3:19-CV-00928-GNS, 2020 WL 1539936, at *1 (W.D. Ky. Mar. 31, 2020) (citing *Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006)).[12] Even if the Court accepts, *arguendo*, that Defendants had a "bad intention" to use the collection action as an excuse to recover attorney's fees, they did nothing more that carry out the collection process "to its authorized conclusion." As previously noted, KRS 286.4-533(3) explicitly authorizes the collection of reasonable attorney's fees actually incurred. The Note, in turn, states: "If we place this note in the hands of an attorney, not our salaried employee, for collection you agree to pay the reasonable fees of our attorney." (Am. Compl. Ex. A, at 1-2). Plaintiffs have failed to show how Defendants' collection of attorney's fees constituted an improper act not authorized by or in the course of the state court proceeding. To the contrary, the collection of attorney's fees was authorized by the Note, compliant with the relevant statute, and given force by the Default Judgment. Therefore, Plaintiffs' abuse of process claim is dismissed.

F.    **Unjust Enrichment**

Finally, Plaintiffs contend that Defendants were unjustly enriched by the Default Judgment and subsequent wage garnishment because Defendants had no legal right to recover court costs, interest, or attorney's fees. (Am. Compl. ¶¶ 110-115, 156-161). Defendants counter that this claim is barred by res judicata and the *Rooker-Feldman* doctrine. (Defs.' Mot. Dismiss 16-18). Unjust enrichment requires a showing of three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable

---

[12] Plaintiffs appear to have deleted the abuse of process section from their response when working to comply with the 25-page limit of LR 7.1(d) and this Court's Order striking Plaintiffs' previously non-compliant 26-page response. (Stricken Resp., DN 39; Order 1, DN 40).

20

retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citation omitted).

With regard to Plaintiffs' claims for usurious interest, this Court has already held that questioning the interest awarded by the Default Judgment runs afoul of the *Rooker-Feldman* doctrine. Thus, the interest awarded in that judgment cannot be the basis of an unjust enrichment claim for all the reasons previously discussed. Insofar as Plaintiffs' unjust enrichment claim is premised on the attorney's fees already awarded by the Default Judgment, that allegation is also barred by *Rooker-Feldman*.[13]

Plaintiffs do contend, however, that even though the Default Judgment awarded court costs, Defendants failed subsequently to file bills of costs in compliance with Kentucky Rule of Civil Procedure ("CR") 54.04(2), which provides that a "party entitled to recover costs shall prepare and serve upon the party liable therefor a bill itemizing the costs incurred by him in the action . . . ." In other words, this rule "requires that the prevailing party . . . serve the losing party . . . with an itemized bill of costs and give the losing party an opportunity to review the bill and to object thereto." *Stewart v. Murphy*, No. 2004-CA-000166-MR, 2005 WL 736624, at *3 (Ky. App. Apr. 1, 2005). Although CR 54.04 does not provide for a time limit, the Kentucky Practice Series suggests that the prevailing party must file a bill of costs within a "reasonable time (presumably 30 days) after judgment." 7 Kurt A. Phillips, Jr., et al., *Kentucky Practice—Rules of Civil Procedure Annotated*, CR 54.04 (6th ed. 2005).

Defendants' res judicata and *Rooker-Feldman* arguments fail because Rule 54.04 provides the procedure a prevailing party must follow to recover costs *after* a judgment providing for costs has been entered. *See Brett v. Isaac*, No. 2008-SC-000712-MR, 2009 WL 2707092, at *2 (Ky.

---

[13] Plaintiffs' response does not even mention attorney's fees when discussing unjust enrichment.

Aug. 27, 2009) ("Reading the rule provides the obvious-costs are assessed *after* judgment."). In other words, Plaintiffs are not complaining about the general award of costs in the Default Judgment; they take issue with Defendants' failure to follow the proper procedure to recover such costs *after* the judgment was awarded. As such, for *Rooker-Feldman* purposes, the source of the injury is not the Default Judgment, it is the action (or inaction) of Defendants. This distinction separates Plaintiffs' court costs claim from their interest and attorney's fees claims. Those claims take issue with the Default Judgment itself while Plaintiffs' claim regarding court costs takes issue with Defendants failure to comply with CR 54.04 after the Default Judgment was entered. *See VanderKodde*, 951 F.3d at 403 (noting that "*Rooker-Feldman* did not apply because the plaintiff's injuries stemmed from the defendant's conduct, not the state-court judgment . . . ." (citation omitted)). As in *VanderKodde* and distinct from Plaintiffs' allegations regarding interest and attorney's fees, Plaintiffs' claim about Defendants' collection of court costs focuses on Defendants' "'actions in tallying the amount of relief requested,' rather than the state-court judgments themselves." *Id.* (quoting *Van Hoven*, 947 F.3d at 893). As such, Plaintiffs have sufficiently pleaded that Defendants recovered courts costs that they had no legal right to recover—i.e., they were unjustly enriched.

Defendants' res judicata argument pertaining to court costs fails for similar reasons. "Federal courts must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494 (6th Cir.1995) (citations omitted). "Therefore, when asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.

1997) (citation omitted).  In Kentucky, for "further litigation to be barred by claim preclusion, three elements must be present:  (1) identity of the parties, (2) identity of the causes of action, and (3) resolution on the merits." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, No. 2018-SC-000344-TG, 2019 WL 6906971, at *3 (Ky. Dec. 19, 2019) (citation omitted).

While the current parties may be the same, Plaintiffs' present cause of action for unjust enrichment is not identical to the previous action.  Defendants' alleged unjust enrichment occurred when they collected costs in the wage garnishment that they were not legally entitled to, an issue not before nor decided on by the state court.  Defendants contend that there is identity of the causes of action because Plaintiffs *could* have objected in the state court action.  (Defs.' Mot. Dismiss 16); *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 627 (W.D. Ky. 2009).  CR 54.04(2) makes clear, however, that the time for the non-prevailing party's objections is within five days *after the service* of the bill of costs.  Here though, Defendants allegedly never filed or served this bill of costs, which would have triggered Plaintiffs' right to object.  How could Plaintiffs have objected to a bill of costs they never received?  Under these present allegations, Plaintiffs' unjust enrichment claim premised on Defendants' collection of court costs is not dismissed.

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' First Motion to Dismiss (DN 15) is **DENIED AS MOOT**, and Defendants' Second Motion to Dismiss (DN 23) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' FDCPA and KCPA are not dismissed.  Plaintiffs' usury claim under KRS 360.020 is dismissed.  Plaintiffs' claims under KRS 453.050 and KRS 286.4-533(3) are dismissed.  Plaintiffs' claim for abuse of process is dismissed.

Plaintiffs' claim for unjust enrichment as premised on an award of interest and attorney's fees are dismissed, but the claim as premised on unlawful court costs remains.

Greg N. Stivers, Chief Judge
United States District Court

May 26, 2020

cc:     counsel of record

24